OPINION
{¶ 1} Plaintiffs-appellants Michael and Marlene Peltier ("the Peltiers") bring this appeal from the judgment of the Court of Common Pleas of Shelby County granting summary judgment to defendants-appellants Carrie McCartan ("McCartan") and Tri-County Veterinary Service ("Tri-County").
 {¶ 2} The Peltiers own a nine acre alpaca farm known as "Mystical Acres Alpacas." During the summer of 2003, the Peltiers owned approximately 45 alpacas, McCartan, who was employed by Tri-County, performed routine veterinary care for the animals. This care included determining whether the females were pregnant via ultrasound. The Peltiers maintained all records regarding the alpacas, including maintenance of the breeding charts, scheduling of veterinary appointments, ultrasound examinations, tracking the ultrasound results, tracking the dates of examination, and noting the identity of the alpaca receiving veterinary services. The Peltiers were also responsible for scheduling any follow-up visits recommended by McCartan.
 {¶ 3} During a typical visit, McCartan would perform transabdominal ultrasounds on the females suspected to be pregnant. McCartan then verbally reported one of three results to the Peltiers: 1) the alpaca appears pregnant; 2) the alpaca does not appear pregnant; or 3) no suitable image could be obtained. McCartan pointed out any images or fetal structures, or lack thereof, to the Peltiers. McCartan then recommended that pregnant alpacas be reexamined at three, six, and nine months to determine if reabsorption or abortion had occurred.
 {¶ 4} Alpacas are South American camelids, which have a cumulative fetal loss rate of up to 25 per cent. Causes of fetal loss (both embryo reabsorption and abortion) include infection, with leptospira or toxoplasma (both common in the environment), nutritional deficiencies, pine needle ingestion, and stress (from extreme weather conditions, overcrowding, travel, external parasites, social interaction with the herd, etc.). During the period McCartan treated the Peltiers' alpacas, she examined a number of alpacas that were unable to become pregnant, or to maintain a viable pregnancy. McCartan had frequently recommended referral to the Ohio State University, College of Veterinary Medicine, for a complete work-up of the Peltiers' alpacas. McCartan personally observed several problems at the farm, including overcrowding inside the barn, as well as incidents of mange and coccidian. In the summer of 2003, a strong storm caused considerable damage to the Peltiers' premises, killing one male alpaca and seriously damaging the barn. Any of these problems could lead to reabsorption or abortion of alpaca pregnancies.
 {¶ 5} During the summer of 2003, several alpacas McCartan had confirmed to be pregnant were overdue. McCartan recommended waiting a few weeks before reexamining the females. Some of the alpacas gave birth to live crias (baby alpacas). McCartan then performed ultrasounds on the remaining females and diagnosed them as not pregnant.
 {¶ 6} On March 19, 2003, McCartan performed an ultrasound on one alpaca, My Peruvian Julee ("Julee"), and determined Julee was pregnant. No other ultrasound examinations were requested by the owners for Julee. On August 6, 2003, the Peltiers' insurance company requested McCartan certify that Julee was pregnant, as of March 19, 2003. McCartan did so, but she did not perform another ultrasound because the Peltiers did not request she do so. The Peltiers then subsequently sold Julee to a third party as a pregnant alpaca. They were required to refund the purchase price upon the return of Julee when she never gave birth.
 {¶ 7} On August 6, 2004, the Peltiers filed a complaint against McCartan and Tri-County alleging that McCartan's performance of veterinary services was negligent, resulting in veterinary malpractice.[1] The Peltiers claim that they suffered monetary damages as a result of McCartan's malpractice. On August 25, 2004, McCartan and Tri-County filed an answer denying veterinary malpractice. McCartan and Tri-County subsequently filed a motion for summary judgment on January 24, 2005. The Peltiers filed their motion in opposition to summary judgment on February 14, 2005. On March 16, 2005, the trial court granted summary judgment to McCartan and Tri-County. The Peltiers appeal from this judgment and raise the following assignments of error.
The trial court erred in determining that a claim assertedagainst a veterinarian for damages arising from the allegednegligent performance of veterinary services only states anaction for professional veterinary malpractice and cannotconstitute a claim for negligent misrepresentation.
 The trial court erred in finding that [the Peltiers'] claimfor monetary damages were, at best, speculative and notrecoverable.
 {¶ 8} When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate. Franks v. The Lima News (1996),109 Ohio App.3d 408, 672 N.E.2d 245. "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Howard v.Ferreri (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 9} The Peltiers' first assignment of error alleges that the trial court erred by considering the "negligent misrepresentation" claim to be the same as one for veterinary malpractice. The Peltiers basically claim that McCartan breached the applicable standard of care when she told them the alpacas were pregnant when they were not. This is no different than stating that McCartan was negligent in her veterinary practice by allegedly misreading the ultrasound and determining the alpacas were pregnant when they were not. Regardless of how it is framed, the claim is still one for veterinary malpractice. Thus, the Peltiers are required to prove the same basic elements: 1) McCartan had a duty to perform according to the appropriate veterinary standards; 2) that she breached that duty; 3) that they suffered damages; and 4) that the breach was the proximate cause of the damages. Although the Peltiers present an affidavit from an expert that McCartan breached the veterinary standard of care, there was no evidence that said breach was the proximate cause of the alleged damages. To the contrary, the Peltiers admit that the embryo could possibly have been reabsorbed or spontaneously aborted. Thus, the first assignment of error is overruled.
 {¶ 10} Second, the Peltiers claim that the trial court erred by finding that the damages were speculative at best. Under Ohio law, parties may not recover for speculative damages.Mid-American Tire, Inc. v. PTZ Trading Ltd., 95 Ohio St.3d 367,2002-Ohio-2427, 768 N.E.2d 619. Thus, to survive a motion for summary judgment, the Peltiers must present some evidence as to their actual damages.
 {¶ 11} Here, the Peltiers claim they suffered injury because McCartan diagnosed the alpaca as pregnant when it was not. They claim that if they had known the alpaca was not pregnant, they would have continued trying to breed the animal and would not have lost a breeding season. However, even if the Peltiers are correct and the animal was not really pregnant when diagnosed as such, the damages they are claiming are for the nonexistent cria. There has been no loss of value in the female alpaca itself. The alleged negligence of McCartan did not change the value of the property. Additionally, even if the animal were to become pregnant, there is no guarantee that the animal would successfully deliver a live cria. Thus to assign value to the nonexistent cria would be to speculate as to what might have been. This is not permissible under Ohio law.
 {¶ 12} The Peltiers also claim to have suffered damages by no longer being able to advertise via Alpaca.com. The nonmoving party bears the burden of presenting some evidence as to each element for which they bear the burden of proof at trial.Dresher v. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The only evidence presented as to the damages was a self-serving affidavit of Michael Peltier stating that he suffered damages. No amount was placed on any of the damages. Although the Peltiers claim they suffered monetary damages, there is no evidence as to what those monetary damages are. Without some proof that the Peltiers suffered actual damages, the trial court did not err in granting summary judgment to McCartan. The second assignment of error is overruled.
 {¶ 13} The judgment of the Court of Common Pleas of Shelby County is affirmed.
Judgment Affirmed.
 Rogers and Shaw, J.J., concur.
[1] Although the Peltiers made four claims, all of them are based upon the premise that McCartan was negligent in the performance of her veterinary services, or veterinary malpractice.