[Cite as *STE Invests., L.L.C. v. Macprep, Ltd.*, 2022-Ohio-2614.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

STE Investments, LLC, et al.

Court of Appeals No. OT-21-036

Appellants

Trial Court No. 21CV126

v.

Macprep, Ltd., et al.

**DECISION AND JUDGMENT**

Appellees

Decided: July 29, 2022

* * * * *

David J. Horvath, for appellants.

D. Casey Talbott, Jared J. Lefevre, Nicholas W. Bartlett,
Howard B. Hershman, and Bruce S. Schoenberger, for appellees.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment by the Ottawa County Common Pleas Court granting a motion to dismiss pursuant to Civ.R. 12(B)(6). For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶ 2}** Plaintiffs-appellants, STE Investments, LLC, Marilyn Taylor, and Sandy and Bart Erwin (hereafter "appellants") filed this appeal setting forth one assignment of error: "The trial court committed reversible error in granting, in toto, the Appellees' collective Motion to Dismiss. [Appellants] sufficiently pled facts in support of each cause of action which facts were more than adequate to sustain their pleading obligations under the Ohio Civil Rules."

## I. Background

**{¶ 3}** On April 26, 2021, appellants filed a complaint against defendants-appellees, Macprep, Ltd., Ohio Western Basin Management Group, Ltd., Maclaren Management, Inc., Susan Gottschalk, Kenneth MacLaren, and R. Scott Prephan (hereafter "appellees") claiming four causes of action: conversion, civil theft, breach of fiduciary duty, and an R.C. 2923.34 civil proceeding for a pattern of corrupt activity (also referred to as civil racketeering).

**{¶ 4}** To support their four causes of action, appellants make 80 factual allegations in their complaint, which are summarized below.

**{¶ 5}** On unknown dates, appellants purchased condominium units from Macprep, Ltd., which, since 2008, is the owner and developer of the Island House Hotel Condominium in Port Clinton, Ottawa County, Ohio. As condominium unit owners, appellants are members of the Island House Hotel Condominium Association (hereafter "IHHCA"). R. Scott Prephan is one of the owners of Macprep, Ltd. (hereafter

2.

"Macprep"), which owns more than two-thirds of the total condo units and "forty-nine percent (49%) of the non-common square footage of the condominium property." In 2016 Macprep, Ltd. hired Ohio Western Basin Management Group, Ltd. (hereafter "Ohio Western") for general condominium services, such as marketing, bookkeeping, rent collection, and housekeeping, and also hired Maclaren Management, Inc. (hereafter "Maclaren Management") for day-to-day condominium operations. Susan Gottschalk is the sole owner and principal of Ohio Western, and Kenneth MacLaren is either the sole owner of, or "exercises complete dominion and control over, Maclaren Management." Macprep, Ohio Western, and Maclaren Management are under the sole and exclusive control of their owners "so that said entity has no free will of its own," and the owners are personally liable for the damages caused by the business entities.

{¶ 6} Maclaren Management collected from appellants IHHCA assessments to be exclusively used for the common area expenses allowed by law and the condominium declarations and bylaws. "Despite owning approximately one-half of the non-common areas (which assumes all other residential units were sold to parties other than Macprep) Macprep maintained an obligation for common area expenses of **only nine percent (9%)** of the total expenses." (Emphasis sic.) These Macprep responsibilities were "passed off" to appellants because the assessments paid were "pooled into the general expense account." Neither Maclaren Management nor Macprep ever caused IHHCA to open and maintain a bank account independently from themselves.

3.

{¶ 7} Two questionable expenses "passed off" to appellants are flood insurance and rental fees exclusively the responsibility of Macprep under its loan documents and for the units it owns. While the amounts appellants paid in assessments and when they paid them are not stated, the flood insurance has an "annual cost of approximately $20,000." Another questionable expense "passed off" to appellants is, "Ohio Western is allegedly owed large sums of money. No explanation has been given for this account payable." There are "other inappropriate expenditures" appellees "passed off" to appellants, such as "the payment of large credit card bills that are associated with one or more the entity Defendants and not IHHCA."

{¶ 8} In the winter of 2020, "without notice or significant discussion," and at the direction of Prephan, Gottschalk, and/or MacLaren, Maclaren Management "**locked the unit owners out of their condominiums by refusing them access to the building**. The front, rear, and other access doors to the building were locked effectively denying all of the individual condominium unit owners' access to their properties." (Emphasis sic.)

{¶ 9} Appellees control the IHHCA board of directors. "That these directors knowingly and without solicitation of offers entered into contracts for management of the property, as identified above and otherwise, which were at all times known to them to be related entities under their direct control and influence and which entities would profit off of the various business affairs of the condominium." Appellees "failed to keep adequate records of their actions, including the collection of assessments, expenditures, voting,

4.

approval, and other minutes of meetings of the Trustees/Board Members for the IHHCA" giving rise to the allegation they "put the interest of same above any interest they may personally have in pecuniary benefit from the operation or ownership of condominium units and any expenditures associated therewith."

{¶ 10} Appellants prayed for compensatory, punitive and treble damages, in addition to equitable relief and any other available relief granted by the trial court.

{¶ 11} On September 13, appellees filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). Appellees argued: (1) conversion cannot lie for money or real property; (2) civil theft cannot prevail where an action is really based on contract; (3) appellants lack standing to bring a fiduciary duty claim; (4) appellants have failed to plead racketeering with particularity required by Ohio law; and (5) that Maclaren Management should be dismissed as an improper party.

{¶ 12} On November 5, over appellants' objections, the trial court granted appellees' motion to dismiss for each of the four causes of action, and appellants timely appealed.

## II. Motion to Dismiss for Failure to State a Claim

### A. Standard of Review

{¶ 13} Civ.R. 12(B)(6) states, "Every defense, in law or fact, to a claim for relief in any pleading * * * may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted * * *." Civ.R. 12(B)(6) motions

5.

test the sufficiency of the complaint, and any allegations or evidence outside the complaint must be excluded from the analysis. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 11.

{¶ 14} We review de novo a trial court's decision on a Civ.R. 12(B)(6) motion to dismiss by accepting as true all factual allegations in the complaint. *Alford v. Collins-McGregor Operating Co.*, 152 Ohio St.3d 303, 2018-Ohio-8, 95 N.E.3d 382, ¶ 10. "'[T]hose allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor.' To grant the motion, 'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" (Citations omitted.) *Id.* "The focus is strictly upon the complaint, as factual findings are never required." *Firstar Bank, N.A. v. Prestige Motors, Inc.*, 6th Dist. Huron No. H-04-037, 2005-Ohio-4432, ¶ 7. We are mindful that while we are to assume the facts alleged in the complaint are true, we do not assume the legal conclusions alleged to be drawn from those facts are also true and disregard any unsupported conclusions included among the facts alleged in the complaint. *O'Loughlin v. Ottawa St. Condominium Assn.*, 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, ¶ 22.

{¶ 15} We recognize that Ohio's notice pleading requirements under Civ.R. 8(A) may be sufficient to defeat a Civ.R. 12(B)(6) motion so long as the plaintiff alleges a set of facts that would support the causes of action set forth in the complaint. *Skaff v. Khutorsky*, 6th Dist. Lucas No. L-15-1249, 2016-Ohio-4903, ¶ 13. Civ.R. 8(A) requires a

6.

short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the pleader deems entitled. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992). The foregoing pleading requirements are further explained in the 1970 Staff Note to Civ.R. 8(A):

> A note of caution to the pleader should be added. Simplified pleading under Rule 8 does not mean that the pleader may ignore the operative grounds underlying a claim for relief. Thus, a pleading which might read "Plaintiff says that defendant owes plaintiff $1,000.00. Wherefore plaintiff demands judgment against defendant in the sum of $1,000.00 and costs," would be subject to a motion to dismiss for failure to state a claim for relief. Does such pleading sound in contract? Tort? What are the operative grounds underlying the claim? In other words, under Rule 8(A) the pleader has failed to state "a short and plain statement of the claim showing that the pleader is entitled to relief."

*See Deutsche Bank Natl. Tr. Co. v. Moore*, 6th Dist. Erie No. E-11-081, 2012-Ohio-5549, ¶ 6; *see also Peters v. Child Study Institute*, 6th Dist. Lucas No. L-80-16, 1980 WL 351351, *4 (June 20, 1980). Where a complaint fails to state the requisite underlying operative grounds, or merely recites the elements of a cause of action, we will not supply the deficiency to prevent dismissal under Civ.R. 12(B)(6). *Moore* at ¶ 6. The foregoing

7.

parameters do not invoke the prohibition of a court granting a Civ.R. 12(B)(6) motion merely because it doubts the plaintiff will prevail. *See Riveredge Dentistry Partnership v. Cleveland*, 8th Dist. Cuyahoga No. 110275, 2021-Ohio-3817, ¶ 20.

{¶ 16} The trial court's judgment did not specify whether dismissal was with or without prejudice, and we will follow precedent that such dismissal is without prejudice in light of that silence. *Deutsche Bank Natl. Tr. Co. v. Edington*, 4th Dist. Scioto No. 13CA3534, 2014-Ohio-1769, ¶ 11. "A trial court's grant of Civ.R. 12(B)(6) dismissal is without prejudice except in those cases where the claim cannot be plead in any other way." *Krohn v. Ostafi*, 6th Dist. Lucas No. L-19-1002, 2020-Ohio-1536, ¶ 12. A dismissal without prejudice generally constitutes an adjudication otherwise than on the merits, and res judicata does not bar refiling the suit because the parties are placed in the same position they were before the suit was filed, unless there is nothing left for the trial court to determine. *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶ 9.

## B. Standing

{¶ 17} Appellees challenge appellants' standing to bring suit, which is a proper issue raised by a Civ.R. 12(B)(6) motion. *U.S. Bank, N.A. v. Coffey*, 6th Dist. Erie No. E-11-026, 2012-Ohio-721, ¶ 13; *Universal Acceptance Corp. v. Colbert*, 2019-Ohio-4377, 147 N.E.3d 1212, ¶ 25 (6th Dist.) (a party's standing is usually determined as of the filing of the complaint); Civ.R. 17(A) (no dismissal until a reasonable time has been allowed

8.

after objection for the real party in interest to ratify the commencement of the action or become a party).

{¶ 18} At this point we must address the essence of appellants' four causes of action as alleged in their complaint. The operative grounds for each cause of action are derived from breaches to the condominium declarations and bylaws, to which they allege in the complaint they are parties by virtue of being condominium unit owners. *Mangano v. 1033 Water St., L.L.C.*, 8th Dist. Cuyahoga No. 106861, 2018-Ohio-5349, ¶ 7 and 59; R.C. 5311.01(CC). When construing appellants' allegations and any reasonable inferences drawn from them in their favor, appellees, who control the IHHCA board of directors and mismanage it, issued assessments; appellants, as condominium unit owners, paid those assessments; and appellants have concerns the expenses paid by IHHCA with those assessments do not comply with the condominium declarations and bylaws, resulting in improper overpayments by appellants.

{¶ 19} The condominium declarations and bylaws are contracts between appellees (who allegedly control the IHHCA board) and unit-owning appellants, and are subject to the rules of contract interpretation and remedies. *Wood v. Cashelmara Condominium Unit Owners Assn., Inc.*, 8th Dist. Cuyahoga No. 110696, 2022-Ohio-1496, ¶ 39; *O'Loughlin,* 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, at ¶ 30 ("If a condominium association violates the terms of its bylaws, the unit owners can maintain a claim for breach of contract"). Therefore, for purposes of a Civ.R. 12(B)(6) challenge, appellants

9.

are real parties in interest in the subject matter of the action pursuant to Civ.R. 17(A), despite being ultimately unsuccessful to withstand the challenge. *See Residential Funding Co. v. Thorne*, 2012-Ohio-2552, 973 N.E.2d 294, ¶ 21 (6th Dist.).

### C. Conversion

{¶ 20} The tort of conversion is the exercise of dominion or control wrongfully exerted over the personal property of another in denial of, or under a claim inconsistent with, that other person's rights. *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). To prevail over a Civ.R. 12(B)(6) challenge to their conversion claim, appellants must allege in the complaint operative grounds for the following: "'(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property right; and (3) damages.'" *McCormick v. Credit Acceptance Corp.*, 6th Dist. Lucas No. L-16-1111, 2017-Ohio-5687, ¶ 21, quoting *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 19.

{¶ 21} Appellants' conversion cause of action is stated in the following numbered paragraphs from the complaint:

82. That the acts of the individual and entity Defendants, in diverting money, concealing money diverted to improper uses, and in approving expenses not related to the common interest of the Unit owners, as executed

jointly and severally * * * over a period of a decade, constitute the conversion of Plaintiffs' property.

83. Such conversion exists by way of the inappropriate allocation of condominium expenses, the inappropriate assessments of one or more of the entity Defendants to the individual unit owners/Plaintiffs, and for the approval of various expenses and execution of contracts binding Plaintiffs to financial obligations without their consent, due process under the Declarations and By-Laws, or Ohio Revised Code Section 5311.01 et seq.

84. That despite repeated demands for an accounting of these expenditures, and in denying them a pursuit of all remedies for the recovery of these expenditures, monies of the parties Plaintiff (sic.) have been unlawfully converted to the sole and absolute benefit of one or more of the entity and individual Defendants whose identities will be more specifically proven at trial.

85. Conversion has also taken place through the deprivation of use of the condominium properties. The effective "lock out" of the condominium owners by Maclaren Management, Macprep, and/or through decision[s] made by the individual and entity Defendants collectively, the Plaintiffs have been deprived use of their property.

11.

86. That the Plaintiffs have demanded a return of the use of their property and were continuously denied access to their detriment.

87. The Plaintiffs have suffered damages by way of their denied use of the property, inability to renovate their properties for the upcoming tourist season, and by way of the inappropriate expenditures and conversions illustrated above and to be proven at trial.

{¶ 22} The trial court determined "that a claim for conversion cannot lie as there is no claim of conversion for a general sum of money or real property." To ascertain the precise basis of the trial court's decision, we review the entire journal entry and the proceedings below. *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 569, 664 N.E.2d 931 (1996), citing *Joyce*, 49 Ohio St.3d at 95, 551 N.E.2d 172. "We have 'consistently held that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof.'" *Salloum v. Falkowski*, 151 Ohio St.3d 531, 2017-Ohio-8722, 90 N.E.3d 918, ¶ 12, quoting *Joyce* at 96.

### 1. Conversion of Real Property

{¶ 23} We will first address appellants' claim for conversion of real property, which they label as "intangible rights." "Actions for conversion are generally based only upon the taking of identifiable, tangible personal property." *Prestige Motors, Inc.*, 6th Dist. Huron No. H-04-037, 2005-Ohio-4432, ¶ at 15. While appellants argue that under

12.

the authority of *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, 226-27, 351 N.E.2d 454 (1976), *rev'd and remanded on other grounds,* 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), their "intangible rights * * * given them by deed" were converted by appellees, we are not persuaded.

{¶ 24} Appellants allege that during the winter of 2020, appellees locked all access doors to the condominium building "effectively denying all of the individual condominium unit owners' access to their properties." The use and enjoyment of appellants' condominium units, whether residential or commercial, are real property rights. R.C. 5311.03(B) and (E). Appellants' claim for conversion of real property fails as a matter of law because "Ohio does not recognize a claim for conversion of real property." *The Bank of New York Mellon v. Lewis*, 6th Dist. Erie No. E-13-051, 2014-Ohio-5599, ¶ 77.

### 2. Conversion of Money

{¶ 25} To prevail over a Civ.R. 12(B)(6) challenge to their conversion of money claim, appellants must also allege in their complaint operative grounds the money was "earmarked." *Zak v. Airhart*, 6th Dist. Lucas No. L-21-1052, 2021-Ohio-4399, ¶ 56, citing *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, ¶ 31 (10th Dist.) (Explaining that "earmarked" means "the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt"). Even

13.

accepting as true the IHHCA board of directors breached the contract documents when it misused "earmarked" funds, such breach of contract does not support a tort claim of conversion. *See RAE Assocs.* at ¶ 34.

{¶ 26} The date(s) of conversion and amount of money subject to conversion are not alleged in the complaint, and appellants argue they are not required to be that specific. The essence of appellants' allegations for the conversion of money derives from appellees improperly inflating the condominium assessments and "passing off" their individual expenses to appellants. Appellants acknowledge any money they paid to IHHCA was for assessments as part of their unit owner responsibilities under the condominium declarations and laws, which infers IHHCA's acquisition of money from appellants had a lawful origin. *See* R.C. 5311.01(E). "Where the object of conversion has been acquired lawfully, the possessor of such property cannot be held to have converted it, or to wrongfully possess it until, upon demand, the possessor fails to restore the object to one who has a right to possess it." *College Station v. Knowles*, 6th Dist. Lucas No. L-93-060, 1993 WL 496687, *6 (Dec. 3, 1993); *Brown Motor Sales, Inc. v. Keeley*, 6th Dist. Lucas No. L-95-330, 1996 WL 549231, *9 (Sept. 30, 1996).

{¶ 27} However, we find appellants' demands on appellees are not for the return of any identifiable money belonging to them. Rather, their demands are described in the complaint as "requests for records * * * accountings, general ledgers, accounts receivable ledger, account payable ledgers, and other evidence of the expenditure of their

14.

association dues."  Appellants, citing to *RAE Assocs.* at ¶ 31, argue their demands for records will form the basis of making the money "capable of being identified." Appellants are mistaken in relying on the lack of specificity in their complaint for Civ.R. 8(A) purposes to satisfy their burden to allege operative grounds for a claim of conversion of money to withstand a Civ.R. 12(B)(6) challenge.

{¶ 28} We find appellants' complaint alleges they paid unidentified money to appellees for IHHCA assessments, which they believe were deposited into non-IHHCA bank accounts controlled by either Maclaren Management or Macprep, and in return expected their money to be used for the lawful, common expenses of IHHCA, which they believe were not.  We infer that appellants can be described as creditors and appellees as debtors in that transaction, and their claim for conversion of money fails.  "[W]here there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."  *Fairbanks Mobile Wash, Inc. v. Hubbell*, 12th Dist. Warren No. CA2007-05-062, 2009-Ohio-558, ¶ 54, quoting *Haul Transport of VA, Inc. v. Morgan*, 2d Dist. Montgomery No. CA 14859, 1995 WL 328995, *4 (June 2, 1995).

{¶ 29} When construing appellants' allegations and any reasonable inferences drawn from them in their favor, we find that appellants' complaint for conversion of real property and of money fails to withstand a Civ.R. 12(B)(6) challenge.  Upon de novo

15.

review, we find no trial court error dismissing without prejudice appellant's conversion cause of action.

### D. Breach of Fiduciary Duty

{¶ 30} Appellants' breach of fiduciary duty cause of action is stated in the following numbered paragraphs from the complaint:

93. That one or more of the individual Defendants, while serving on the Board of Directors of the IHHCA, or acting at the express direction of the Board and acquiescing thereto, did make numerous false and fraudulent claims to Plaintiffs.

94. Such fraudulent claims include the authentication of expenses associated with the Entity Defendants' own expenses which were being passed off to Plaintiffs and others.

95. Breaches of fiduciary duty also include the failure to elect Board Members pursuant to the Declarations and statute.

96. Breaches of fiduciary duty include but are not limited to co-mingling of funds, the improper handling of IHHCA money, the improper expenditure and handling of Plaintiffs' money, and the "lock-out" (referenced above whereby Plaintiffs were denied access to their properties), and other acts yet to be determined but to be proven at trial.

16.

97. Furthermore, said persons breach their fiduciary duty to the Plaintiffs by failing to keep adequate books and records in regards to the finances and expenses pertaining to the common elements, by failing to keep true and accurate records of meetings of the Board, actions of the Board, contracts entered into by the Board, the competitive bidding process and such other documents and allowing access to same as required by Section 5311.091 of the Revised Code.

98. Furthermore, and in pursuance of their own pecuniary interest, the individual Defendants along with the entity Defendants have pressured Plaintiffs and others to sell their condominium units to Macprep at a significantly discounted value.

99. That this purported sale serves no interest other than to advance the pecuniary interests of Macprep, Ken Maclaren, and any other parties associated with the ownership or management of the condominium property.

100. At no time were the individual unit owners' pecuniary interests of any concern to the then-acting Board Members and their interests were essentially disregarded for the Board Members own personal gains.

{¶ 31} The trial court determined, "there is no fiduciary relationship which can be breached." We agree. Determining the existence of a duty is a question of law. *Estate of*

*Ciotto v. Hinkle*, 2019-Ohio-3809, 145 N.E.3d 1013, ¶ 13 (6th Dist.).  "A fiduciary duty is generally defined as a duty, created by an individual's undertaking, to act primarily for the benefit of others in connection with the undertaking."  *O'Loughlin,* 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, at ¶ 32.

{¶ 32} First, appellants' tort claim arising from a breach of contract is not viable in the absence of a duty.  "'When a duty in tort exists, a party may recover in tort.  When a duty is premised entirely upon the terms of a contract, a party may recover based upon breach of contract.'"  *State Auto Property & Cas. Ins. Co. v. ABCO Fire Protection, Inc.*, 2021-Ohio-1189, 170 N.E.3d 1255, ¶ 9 (8th Dist.), quoting *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 10.  As further explained by the Ohio Supreme Court, "no matter how willful or malicious the breach, it is no tort to breach a contract."  *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 694, 590 N.E.2d 1228 (1992), *overruled on other grounds, Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994).

{¶ 33} Second, it is well-settled that boards of condominium associations are not charged with either a common law or statutory fiduciary duty to their members because the Ohio Condominium Act, R.C. 5311, creates the applicable rights and remedies. *O'Loughlin* at ¶ 33; *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 282-84, 617 N.E.2d 1075 (1993) (no common law or R.C. 5311 fiduciary relationship "between developers and owners, developers and owners'

associations, or developers and purchasers"); *Wood*, 8th Dist. Cuyahoga No. 110696, 2022-Ohio-1496, at ¶ 32 (no fiduciary duty by a condominium association board of directors is owed to association members).

{¶ 34} Third, appellants allege appellees are IHHCA board members, but IHHCA is not a named party and is only described in the complaint as being formed from the filing with the Ottawa County Recorder's Office of "a Declaration of Condominium and By-Laws of Condominium Association for an entity formed and commonly known as the Island House Hotel Condominium." Appellants' complaint leaves us to infer that IHHCA is an unincorporated association, and, therefore, its board of directors are not subject to the duties of non-profit corporation directors under R.C. 1701.30(B). *O'Loughlin* at ¶ 33-34; R.C. 5311.08(E) (non-profit incorporation of the condominium association is discretionary).

{¶ 35} Fourth, appellants' reliance on *Elam v. Woodhawk Club Condominium*, 8th Dist. Cuyahoga No. 107092, 2019-Ohio-457, ¶ 21, citing *Behm v. Victory Lane Unit Owners' Assn., Inc.*, 133 Ohio App.3d 484, 487, 728 N.E.2d 1093 (1st Dist.1999), for the proposition that a condominium association and its board of directors have a fiduciary duty to act in the best interest of the property owners, is misplaced for three reasons. The court concluded there was no such fiduciary duty owed by a condominium association to unit owners and clarified that a non-profit board of directors' duty to act in the best interests of condominium owners would be derived from R.C. 1702.30. *Id.* at ¶ 24-25,

19.

citing *Kleemann v. Carriage Trace, Inc.*, 2d Dist. Montgomery No. 21873, 2007-Ohio-4209, ¶ 40-45; *O'Loughlin* at ¶ 33-34 (ultimately finding R.C. 1702.30(B) non-profit board duties do not apply to the board of an unincorporated association). We find *Behm's* holding supported a breach of contract, not a breach of fiduciary duty, where "the actual nature of these claims sounds in contract, not tort." *O'Loughlin* at ¶ 30. Finally, appellants do not allege a breach of contract cause of action in their complaint, and they do not allege in their complaint any facts from the condominium declarations and bylaws where the Island House Hotel Condominium development chose to establish fiduciary duties in those contracts, so we cannot speculate as to the existence of a fiduciary duty derived from them. *See Kleemann* at ¶ 35.

{¶ 36} Fifth, appellants also point to, *Akerstrom v. 635 W. Lakeside, Ltd.*, 2018-Ohio-98, 105 N.E.3d 440, ¶ 18 (8th Dist.), which they argue "recognized the appropriateness of a fiduciary duty claim." Appellants are mistaken, as the court found the opposite. *Id.* The court's decision does not automatically stand for the proposition that had the plaintiff filed a cause of action asserting individual damages, the court would have recognized a breach of fiduciary duty. Rather, the court identified "three mechanisms upon which an aggrieved condominium owner may seek enforcement of the condominium association's instruments in lieu of relying on the Association to act": (1) under R.C. 5311.23(A), for breach of condominium instruments, (2) under R.C. 5311.23(B), for declaratory judgment action, and (3) under R.C. 5311.23(C), for class

20.

action. *Id.* at ¶ 11-12.  None of the foregoing mechanisms are for a breach of fiduciary duty, and appellants' complaint does not state causes of action for breach of condominium instruments, declaratory judgment action, or class action.

{¶ 37} Appellants argue it "makes no sense" to interpret R.C. 5311 as limiting "only the Board could sue the Board Member who was breaching his or her duties * * * [where] the Board Members conspired equally and would certainly never be in a position to sue themselves."  They argue that because the condominium association "is merely a legal fiction created for the purpose of electing a Board to govern the affairs of the individual unit owners" and acts as nothing more than a flow-through entity for collecting revenues and paying expenses, it makes no sense "that the person who actually wrote the check lacks standing to bring a fiduciary claim."  We find the IHHCA is not merely a "legal fiction," but a statutorily-defined entity, R.C. 5311.01(DD), with numerous powers, such as under R.C. 5311.08, and 5311.081.  We also find the *Akerstrom* court was clear when it held: "Under R.C. 5311.23 and 5311.20, the Association is the party entitled to enforce the obligations possessed or imposed upon the unit owners association by statute or otherwise."  *Id.* at ¶ 16.

{¶ 38} When construing appellants' allegations and any reasonable inferences drawn from them in their favor, we find that appellants' complaint for breach of fiduciary duty fails to withstand a Civ.R. 12(B)(6) challenge.  Upon de novo review, we find no

trial court error dismissing without prejudice appellant's breach of fiduciary duty cause of action.

## E. Civil Theft

{¶ 39} Appellants' tort for civil theft cause of action is stated in the following numbered paragraphs from the complaint:

89. Revised Code Section 2307.60(A)(1) clearly states that any person who has been injured by criminal act may bring a civil action for the recovery of damages. Such damages include punitive or exemplary damages.

90. That individual and entity Defendants through a pattern of collusion, fraudulent conduct, and intentional behavior did deprive the Plaintiffs of money and use of their property which constitutes theft and embezzlement under the Ohio Revised Code.

91. The Plaintiffs have been damaged financially in amounts to be determined at trial for the inappropriate expenses and diversion of funds as set forth above as well as by way of the deprived use of their property and value associated therewith.

{¶ 40} The trial court determined, "the claim [of] civil theft * * * to [not] contain sufficient facts to state [the] claim." We agree.

22.

{¶ 41} Appellants brought their civil theft cause of action pursuant to R.C. 2307.60(A)(1), which states, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law * * *." R.C. 2307.61(A) authorizes recovery of damages: "If a property owner brings a civil action pursuant to [R.C. 2307.60(A)] to recover damages from any person who * * * commits a theft offense, as defined in [R.C. 2913.01], involving the owner's property, the property owner may recover [damages] * * *." R.C. 2913.01(K)(1) defines the "theft offense" of "theft" pursuant to R.C. 2913.02(A). Appellants' complaint is silent as to which of the five definitions of "theft" forms the basis of their cause of action, and we decline to speculate.[1]  R.C. 2913.02(A)(1) to (5).

{¶ 42} Nevertheless, pursuant to R.C. 2307.60(B)(1)(a), appellants' civil theft claim fails as a tort because its essence is derived from contracts: alleged IHHCA mismanagement and improper assessments that breach the terms of the condominium declarations and bylaws. R.C. 2307.60(B)(1)(a) defines a "tort action" as "a civil action for damages for injury, death, or loss to person or property other than a civil action for damages for a breach of contract or another agreement between persons." Consequently, appellants are not entitled to R.C. 2307.61 damages for claims based on a breach of contract. *Wildcat Drilling, LLC v. Discovery Oil & Gas, LLC*, 2018-Ohio-4015, 121 N.E.3d 65, ¶ 41 (7th Dist.), *rev'd and remanded on other grounds,* 164 Ohio St.3d 480,

---

[1] The term "embezzlement" does not appear in R.C. 2913.02(A).

23.

2020-Ohio-6821, 173 N.E.3d 1156. In light of having previously found no fiduciary relationship from the complaint, appellants' civil theft claim also fails because "the existence of a contract precludes the assertion of a tort claim based on the same conduct unless there is a duty owed separate from the contract." *Kott v. Gleneagles Professional Builders & Remodelers, Inc.*, 197 Ohio App.3d 699, 2012-Ohio-287, 968 N.E.2d 593, ¶ 15 (6th Dist.).

**{¶ 43}** When construing appellants' allegations and any reasonable inferences drawn from them in their favor, we find that appellants' complaint for civil theft fails to withstand a Civ.R. 12(B)(6) challenge. Upon de novo review, we find no trial court error dismissing without prejudice appellant's civil theft cause of action.

### F. Civil Racketeering

**{¶ 44}** Appellants' tort of civil racketeering cause of action is stated in the following numbered paragraphs from the complaint:

107. By their conduct above, the individual and entity Defendants did create and operate an enterprise that was designed to and did engage in the illegal activities set forth above therefore rendering them all jointly and severally liable for all damages available at law.

108. The Plaintiffs were directly and measurably damaged financially and otherwise through these illegal activities thus entitling them to treble damages, attorney fees and costs of this suit as well as injunctive

24.

relief preventing all Defendants from engaging in further activities as are deemed violative of law and as this Court finds equitable.

{¶ 45} The trial court determined, "the claim [of] * * * racketeering to [not] contain sufficient facts to state [the] claim." We agree.

{¶ 46} R.C. 2923.34(A) "provides a civil remedy for persons injured or threatened with injury by a violation of R.C. 2923.32." *Peirce v. Szymanski*, 6th Dist. Lucas No. L-12-1164, 2013-Ohio-1929, ¶ 5. Pursuant to R.C. 2923.32(A)(1), "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

{¶ 47} When construing appellants' allegations and any reasonable inferences drawn from them in their favor, we find that appellants' complaint for civil racketeering fails to withstand a Civ.R. 12(B)(6) challenge. Despite appellants' attempts to echo the relevant terminology required for civil racketeering, once again, the essence of this cause of action derives from breach of contract claims for appellees' alleged IHHCA mismanagement and improper assessments, where appellees controlled the IHHCA board of directors. Breach of the condominium declarations and bylaws do not create a tort claim for civil racketeering absent any fiduciary duty, such as here, owed by appellees to appellants. *Kott,* 197 Ohio App.3d 699, 2012-Ohio-287, 968 N.E.2d 593, at ¶ 15.

25.

{¶ 48} Upon de novo review, we find no trial court error dismissing without prejudice appellant's civil racketeering cause of action.

### III. Conclusion

{¶ 49} Appellants' assignment of error is not well-taken. On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed and the dismissal is without prejudice. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed,
and dismissed,
without prejudice.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.          _____
                                                    JUDGE
Thomas J. Osowik, J.

Myron C. Duhart, P.J.              _____
CONCUR.                                         JUDGE

                                             _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.