[Cite as *McCarthy v. Ketner*, 2023-Ohio-4241.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Jason McCarthy, et al.                          Court of Appeals No.  WD-22-071

    Appellants                          Trial Court No.  22-CVF-00814

v.

Mark Ketner, DVM, et al.                        **DECISION AND JUDGMENT**

    Appellees                           Decided:  November 22, 2023

* * * * *

J. Jeffrey Holland, for appellants.

Jerome F. Rolfes and Thomas E. Switzer, for appellees.

* * * * *

**SULEK, J.**

{¶ 1} Appellants Jason McCarthy and Christina Torda ("owners") appeal the December 6, 2022 judgment of the Bowling Green Municipal Court dismissing their complaint against appellees Mark Ketner, DVM, Richard Martin, DVM, Midway Animal Hospital, Inc., and Unknown Defendants 1-5 (collectively, "Midway"). Because the veterinary negligence claim is not time-barred, the trial court's judgment is reversed, in part.

## I. Facts and Procedural Background

{¶ 2} According to owners' complaint and attached expert opinion, in February 2019, their 12-year-old female Golden Retriever/Labrador mixed-breed dog, Ursa, was a registered patient of Midway Animal Hospital. Ursa was prescribed Carprochew, a non-steroidal, anti-inflammatory medication ("NSAID"), to treat her arthritis. At that time, owners' request for a referral to an orthopedist was deemed unnecessary.

{¶ 3} On January 31, 2020, Ursa returned to the clinic for reevaluation and radiological examination. She was diagnosed with "bad arthritis" in her right elbow. Symptomatic treatment continued following appellee Dr. Richard Martin's telephone consultation with an orthopedic surgeon from The Ohio State University. Ursa's medication was changed from Carprochew to Deramaxx, with the active ingredient of deracoxib, also an NSAID. In February, the pain medication gabapentin was also prescribed.

{¶ 4} In June and July 2020, owners reported that Ursa was exhibiting signs of depression, lethargy, and incoordination and weakness in her hind legs. Ursa's blood was tested on August 1, 2020; Midway reported that the results were normal. On September 28 and 30, 2020, owners reported to Midway that Ursa was drinking water excessively, was vomiting and had diarrhea, had difficulty eating, and had blood in her stool.

{¶ 5} Ursa was hospitalized from October 2, to October 4, 2020. She continued to take Deramaxx following her discharge. Her condition steadily deteriorated and by October 6, 2020, she was unable to stand. On October 7 and 9, Midway gave Ursa a

2.

steroid injection, an oral steroid, and she was continued on the prescribed NSAID medication.

{¶ 6} On October 10, 2020, owners took Ursa to a second veterinary clinic where they allegedly learned for the first time the dangerous side effects and contraindications of Deramaxx use. The clinic performed an ultrasound resulting in exploratory abdominal surgery and gallbladder removal. The surgery revealed that the intestinal wall had multiple areas of erosion and ulceration, known side-effects of extended Deramaxx use. Ursa died on October 14, 2020.

{¶ 7} Owners commenced this action on October 10, 2022 alleging that Midway's failure to adequately examine, diagnose and treat Ursa caused her death. They maintain that the deterioration of Ursa's condition and ultimate death, was caused by long-term, unmonitored NSAID use combined with the administration of two steroidal anti-inflammatory drugs. Owners asserted five counts: negligence/negligent misrepresentation, breach of contract, breach of fiduciary duty, breach of bailment, and punitive damages.

{¶ 8} On November 14, 2022, Midway filed a Civ.R. 12(B)(6) motion to dismiss arguing that the veterinary negligence claim was time-barred, that the breach of contract and breach of bailment claims were subsumed under the veterinary negligence claim, that as a matter of law no fiduciary duty is owed to an animal owner, and that recovery of punitive damages was linked to the time-barred tort claim. Midway further argued that as a matter of law the veterinary negligence claim against Midway Animal Hospital, Inc.,

3.

fails because a corporation does not practice medicine and cannot be sued for malpractice.  Owners opposed the motion.

{¶ 9} On December 6, 2022, the trial court summarily granted Midway's motion to dismiss "for the reasons articulated in defendants' Motion and Reply Brief and after careful consideration of the plaintiffs' Brief in Opposition."  This appeal followed.

## II. Assignment of Error

{¶ 10} Owners raise the following assignment of error on appeal:

The Trial Court erred by granting Defendants'/Appellees' motion to dismiss Appellants' complaint for failure to articulate a cause of action upon which relief can be granted.

## III. Analysis

## A. Standard of Review

{¶ 11} Appellate courts review de novo a trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted. *Curcio v. Hufford*, 2022-Ohio-4766, 204 N.E.3d 1107, ¶ 12 (6th Dist.), citing *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.  "A motion to dismiss under Civ.R. 12(B)(6) is procedural in nature and tests the sufficiency of the complaint." *Buckley v. Croghan Colonial Bank*, 6th Dist. Lucas No. L-22-1103, 2022-Ohio-3684, ¶ 10, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992).  A court is permitted to consider the complaint,

answer, and any material either incorporated by reference or attached to those pleadings. *Walker v. Toledo*, 2017-Ohio-416, 84 N.E.3d 216 (6th Dist.), ¶ 19; Civ.R. 10(C).

{¶ 12} In reviewing a Civ.R. 12(B)(6) motion, the court presumes that the complaint's factual allegations are true and makes all reasonable inferences in the nonmoving party's favor. *Curcio* at ¶ 12, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). To dismiss the complaint, "'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. This standard applies motions to dismiss based on limitations grounds. *Krohn v. Ostafi*, 6th Dist. Lucas L-19-1002, 2020-Ohio-1536, ¶ 12, quoting *LGR Realty, Inc. v. Frank & London, Ins. Agency*, 152 Ohio St.3d 517, 2018-Ohio-334, 98 N.E.3d 241, ¶ 10.

### B. Veterinary Negligence/Negligent Misrepresentation

{¶ 13} Owners first dispute the trial court's finding that they failed to assert their veterinary negligence claim within the two-year limitations period under R.C. 2305.10. R.C. 2305.10 relevantly provides:

> (A) Except as provided in division (C) or (E) of this section, an action based on a product liability claim and an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues. Except as provided in divisions (B)(1), (2), (3), (4), and

(5) of this section, a cause of action accrues under this division when the injury or loss to person or property occurs.

{¶ 14} Midway correctly states that in Ohio, a dog is considered personal property. R.C. 955.03 provides:

Any dog which has been registered under sections 955.01 and 955.04 of the Revised Code and any dog not required to be registered under such sections shall be considered as personal property and have all the rights and privileges and be subject to like restraints as other livestock.

{¶ 15} "A plaintiff's burden to establish veterinary negligence parallels a plaintiff's burden in establishing professional negligence against other medical professionals." *Ullmann v. Duffus*, 10th Dist. Franklin No. 05AP-299, 2005-Ohio-6060, ¶ 14; *see also Lauderbaugh v. Gellasch*, 8th Dist. Cuyahoga No. 91430, 2008-Ohio-6500, ¶ 7. "The plaintiff must show (1) a duty to perform according to the appropriate veterinary standards; (2) that the veterinarian breached that duty; (3) that the breach was the proximate cause of the damages; and (4) that the plaintiff suffered damages." *Lauderbaugh* at ¶ 7, citing *Peltier v. McCartan*, 3d Dist. Shelby No. 17-05–14, 2005-Ohio-3901, ¶ 9; *see also Kaiser v. Helbig*, 3d Dist. Union No. 14-20-14, 2021-Ohio-887, ¶ 9; *Ullmann* at ¶ 14.

{¶ 16} Owners argue that Ursa's death was caused by the long-term use of NSAIDs and the use of contraindicated steroidal anti-inflammatories, as expressed in their expert's opinion letter. They assert that the statute of limitations began running

6.

under either the last date of treatment, October 9, 2020, or the date of Ursa's death, October 14, 2020.

{¶ 17} Conversely, Midway maintains that the action was time-barred because the alleged first injury to Ursa occurred in June 2020, when Ursa's condition worsened. Midway contends that the course-of-treatment rule does not apply to professional negligence claims and that the statute of limitations begins running at the time of the negligent act regardless of when the damages resulted. Alternatively, Midway contends that even assuming the viability of the course-of-treatment analysis, the claim was still untimely as the complaint alleged that October 7, 2020 was the last day Midway treated Ursa and administered the NSAID Deramaxx.

{¶ 18} Owners' complaint alleges that "Ursa's death was caused by [Midway's] acts or omissions, which a veterinarian of ordinary skill, care, and diligence would not have done under similar circumstances." Also, "[Midway's] negligent representations, misrepresentations, actions, and failures to act were the direct and proximate cause of Ursa's death * * *. Owners, therefore, are seeking to recover for the loss of Ursa, which occurred on October 14, 2020 when the dog died. Owners then filed their complaint on October 10, 2022, prior to the expiration of the statute of limitations. Thus, the trial court erred in dismissing owners' claim for negligence.

{¶ 19} The parties' arguments include discussion of the Ohio discovery rule, which provides that the cause of action accrues when the plaintiff discovers or should have discovered the injury caused by the defendant. *See O'Stricker v. Jim Walter, Corp.*,

7.

4 Ohio St.3d 84, 447 N.E.2d 727 (1983).  We need not analyze whether the discovery rule applies to claims for veterinary negligence, however, because owners timely filed their claim within two years of the loss of Ursa.

{¶ 20} Construing the facts alleged in the complaint in owners' favor, the trial court erred in dismissing their veterinary negligence/negligent misrepresentation claim for relief based on the expiration of the limitations period under R.C. 2305.10 because the complaint was filed within two years of the loss of Ursa.  Thus, for Civ.R. 12(B)(6) purposes, the complaint was timely filed.

### C. Corporate Liability

{¶ 21} Owners argue that the trial court erred by dismissing their claims against Midway Animal Hospital, Inc., based on Midway's assertion that in a veterinary negligence action, only licensed veterinarians may be sued directly.  Owners generally contend that corporations can be found secondarily liable for other forms of negligence.

{¶ 22} Citing *Lawrence v. Big Creek Veterinary Hosp., L.L.C.*, 11th Dist. Geauga No. 2006-G-2737, 2007-Ohio-4627, Midway argues that Ohio law has not applied the doctrine of respondeat superior to impose secondary liability on a veterinarian's business form.  However, in Midway's brief supporting their motion to dismiss they acknowledge that a corporation may be sued under a respondeat superior theory of liability and that the corporation may be vicariously liable when one or more of its principals are found liable. We find that a veterinary practice is not markedly different than other business entities

8.

and the fact that it does not practice veterinary medicine is immaterial. *See Reed v. Vickery*, S.D.Ohio No. 2:09-cv-91, 2009 WL 3276648,*4 (Oct. 9, 2009).

{¶ 23} Further, owners' complaint names unknown defendants as employees or agents of defendant Midway Animal Hospital. Such claims have yet to be developed during the course of discovery.

{¶ 24} Reviewing the complaint in a light most favorable to owners, we cannot conclude "beyond doubt" that appellants' failed to present a viable negligence claim against appellee Midway and the court erred in dismissing the claims under Civ.R. 12(B)(6).

{¶ 25} While owners' negligence claim remains, their breach of contract and bailment claims asserted against appellee Midway were properly dismissed as they are duplicative and subsumed under the theory of veterinary negligence. *See Kaiser*, 3d Dist. Union No. 14-20-14, 2021-Ohio-887, at ¶ 13 (fraudulent concealment claim subsumed as rooted in veterinary negligence); *Chilton-Clark v. Fishel*, 10th Dist. Franklin No. 16AP-76, 2016-Ohio-7135, ¶ 8-10 (claims of breach of contract and breach of fiduciary duty fall within the purview of professional malpractice); *Rosen v. Lax*, 9th Dist. Summit No. 27367, 2016-Ohio-182, ¶ 16 (duplicative claims are subsumed within the legal malpractice claim).

## D. Fiduciary Duty

{¶ 26} Owners next argue that the trial court erred in dismissing their breach of fiduciary duty claim. Though they acknowledge that such a duty has yet to be recognized

9.

in Ohio courts, they contend that due to fundamental differences in the care of animals versus other types of personal property, a breach of the duty between an animal care provider and pet owner is a viable claim. Midway asserts that a veterinarian has only a business, not fiduciary, relationship with a pet owner.

{¶ 27} A "fiduciary" has been defined as a person having a duty, created by the person's undertaking, to act primarily for the benefit of another in matters connected with the undertaking. *STE Investments, LLC v. Macprep, Ltd.*, 6th Dist. Ottawa No. OT-21-036, 2022-Ohio-2614, ¶ 31, quoting *O'Loughlin v. Ottawa Street Condominium Assn.*, 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, ¶ 32.

{¶ 28} In order to establish a breach of fiduciary duty a claimant must establish "the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the breach." *Newcomer v. Natl. City Bank*, 2014-Ohio-3619, 19 N.E.3d 492, ¶ 9 (6th Dist.), citing *Strock v. Pressnell*, 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988).

{¶ 29} Appellants argue that a determination of whether they had set forth a cognizable breach of fiduciary duty claim, required that the trial court analyze the specific facts of the case, accounting for the fundamentally different nature of companion animals from other types of personal property. Appellants claim that such analysis necessarily includes an examination of animal cruelty laws and statutes regulating the practice of veterinary medicine.

{¶ 30} Owners' claim fails because Ohio has not recognized a fiduciary relationship between a veterinarian and the pet owner. While a veterinarian is hired by

10.

the pet owner, medical care is directed only to the pet which is considered personal property. Further, because veterinary practice and licensing is statutorily regulated, a veterinarian has an interest in complying with state licensing strictures; such interest may be in direct conflict with the wishes of the pet owner. Accordingly, we find that the fiduciary duty claim fails as a matter of law.

## IV. Conclusion

{¶ 31} Based on the foregoing, the Bowling Green Municipal Court's judgment dismissing owners' complaint is reversed, in part. The veterinary negligence claims, including the punitive damages' request, against all named defendants may proceed. The judgment is affirmed in all other respects and the matter is remanded for further proceedings. Pursuant to App.R. 24, appellees are ordered to pay the costs of this appeal.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Charles E. Sulek, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

11.